**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| **REBECCA BRYANT** | : | |
| c/o Freking Myers & Reul LLC | : | Case No. 1:24-cv-119 |
| 600 Vine St., 9th Floor | : | |
| Cincinnati, OH 45202 | : | Judge _____ |
| | : | |
| Plaintiff, | : | **COMPLAINT WITH JURY DEMAND** |
| | : | |
| v. | : | |
| | : | |
| **CITY OF CINCINNATI** | : | |
| **FIRE DEPARTMENT** | : | |
| 801 Plum Street | : | |
| Cincinnati, OH 45202 | : | |
| | : | |
| and | : | |
| | : | |
| **HAROLD WRIGHT** | : | |
| 3100 Cranbrook Drive | : | |
| Cincinnati, OH 45251 | : | |
| | : | |
| and | : | |
| | : | |
| **DAMONTE BROWN** | : | |
| c/o City of Cincinnati Fire Department | : | |
| 801 Plum Street | : | |
| Cincinnati, OH 45202 | : | |
| | : | |
| Defendants. | : | |

Plaintiff Rebecca Bryant states the following claims against the City of Cincinnati Fire Department, Harold Wright, and Damonte Brown (collectively, "Defendants"):

**PARTIES**

1.    Plaintiff Rebecca Bryant ("Plaintiff") is a resident and citizen of the State of Ohio.

2.    Defendant City of Cincinnati Fire Department ("City") is a division of the City of Cincinnati, a municipality under the State of Ohio.

1

3. Defendant Harold Wright ("Wright") is a resident and citizen of the State of Ohio and former City of Cincinnati Fire Department Lieutenant.

4. Defendant Damonte Brown ("Brown") is a resident and citizen of the State of Ohio and City of Cincinnati Firefighter.

**JURISDICTION**

5. This Court has personal jurisdiction over Defendant City which is located in Hamilton County, Ohio and has caused tortious injury in this District.

6. This Court has personal jurisdiction over Defendants Wright and Brown as they each are domiciled in Hamilton County, Ohio and have caused tortious injury in this District.

7. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C.§ 1331 because they arise under the laws of the United States, namely Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq*. and 42 U.S.C. § 1983.

8. This Court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367 on the grounds that these claims are so related to the federal claims over which the Court has original jurisdiction that they form a part of the same case or controversy.

9. Plaintiff filed a timely charge of discrimination with the Ohio Civil Rights Commission ("OCRC"), which was dual filed with the Equal Employment Opportunity Commission ("EEOC").

10. Plaintiff was issued her Notice of Right to Sue from the OCRC on January 11, 2024 (Attached as Ex. A). This Complaint is timely filed based on the tolling provision provided by the Ohio Revised Code.

11.     Plaintiff was issued her Notice of Right to Sue from the EEOC on February 14, 2024 (Attached as Ex. B).  This Complaint is timely filed within 90 days from receipt of that notice.

12.     This Court is a proper venue pursuant to 28 U.S.C. § 1391 as Defendant employed Plaintiff in this District and the conduct that gives rise to the legal claims in this Complaint occurred in this District.

## FACTUAL ALLEGATIONS

13.     Plaintiff applied for employment with the City as a Firefighter in or around the Fall of 2018.

14.     At that time, Defendant Wright was the Lieutenant in charge of recruiting.

15.     Plaintiff was fully qualified for her position at the time of her application.

16.     In or around December 2018, Defendant Wright indicated to Plaintiff that the City was not going to move forward with her employment.

17.     Defendant Wright told Plaintiff that he was vouching for her throughout the process.

18.     During the application process Plaintiff was in frequent contact with Defendant Wright.

19.     Plaintiff felt indebted to Defendant Wright as her application was pending.

20.     Plaintiff felt that she owed her employment opportunity to Defendant Wright as he allegedly vouched for her during the application process.

21.     On or around December 8, 2018, Defendant Wright invited Plaintiff to his house to play pool.

22.     Plaintiff had not received a final offer of employment prior to December 8, 2018.

23. On or around December 8, 2018, Defendant Wright raped Plaintiff at his residence.

24. Plaintiff was accepted into the City's recruit class on February 9, 2019.

25. On or around June 21, 2021, Ervin Mitchell ("Mitchell") made sexually harassing comments to Plaintiff, including statements that there was no place for women in the workplace.

26. Plaintiff reported Mitchell and was informed that an internal investigation was conducted.

27. Plaintiff was never made aware of the findings of the investigation.

28. In or around August 2022, Defendant Brown asked Plaintiff to drive him to his car after an assignment party attended by several Cincinnati Fire employees.

29. Defendant Brown sexually assaulted Plaintiff and attempted to rape her.

30. On or around October 10, 2022, Plaintiff reported both Defendant Brown and Defendant Wright's past conduct.

31. Plaintiff submitted a public records request in relation to her complaints.

32. The public records request specifically requested investigation materials, discipline, and any and all other information related to Defendants Wright and Brown, as well as Mitchell.

33. The City did not turn over all responsive documents related to Plaintiff's request.

34. Missing from the responsive documents was, at a minimum, (1) Plaintiff's own Chief's Report complaining of Defendant Wright; (2) a report of sexual harassment against Defendant Wright by another female Firefighter, Meghan McQuiddy, from the year prior to Plaintiff being raped; and (3) Plaintiff's complaint and records of any investigation into Mitchell.

35. Plaintiff later became aware of Ms. McQuiddy and realized that her information

was not included in the public records request materials.

36.    Ms. McQuiddy requested her own complaint from HR.

37.    HR informed Ms. McQuiddy that they had lost her complaint.

38.    As the City conducted an internal investigation, Defendants Brown and Wright were placed on paid administrative leave.

39.    The City required Plaintiff to continue working during the pendency of the investigation, forcing her to use her PTO hours until she complained of the disparate treatment.

40.    The City later misrepresented Plaintiff's remaining PTO hours, resulting in her losing out on approximately 100 hours of pay.

41.    During the investigation, the City conducted several interviews.

42.    Present for these interviews was Falencia Frazier ("Frazier"), the Internal Lieutenant.

43.    Plaintiff was told Frazier was there to observe and make sure the City was "following the contract."

44.    Frazier questioned each of the witnesses.

45.    Frazier made inappropriate comments during the interviews.

46.    Frazier made comments about Plaintiff's breast size during the interviews.

47.    Frazier asked Defendants Brown and Wright leading questions during the interviews.

48.    Frazier is close personal friends with Defendant Wright.

49.    Frazier called Defendant Wright to inform him that the charges against him would be substantiated and that the City would recommend termination.

50.    Knowing that he would be terminated, Defendant Wright retired.

51.     Defendant Wright maintained his pension upon his retirement.

52.     Defendant Wright retired without discipline for Plaintiff's rape.

53.     Defendant Wright retired in good standing with the City.

54.     Prior to his retirement, the City knew that Defendant Wright was charged with domestic violence in 2014.

55.     Prior to his retirement, the City knew that Ms. McQuiddy complained about Defendant Wright in 2017.

56.     Subsequent to learning that Defendant Wright had domestic violence charges against him, the City retained Defendant Wright in his Lieutenant in charge of recruiting position until his retirement.

57.     Subsequent to learning that Ms. McQuiddy complained about Defendant Wright, the City retained Defendant Wright in his Lieutenant in charge of recruiting position until his retirement.

58.     In his Lieutenant in charge of recruiting position, Defendant Wright was in charge of recruiting young, female firefighters.

59.     The City did not substantiate Plaintiff's claims against Defendant Brown.

60.     Subsequent to the investigation, the City permitted Defendant Brown to work in Plaintiff's district and on Plaintiff's same schedule.

61.     Subsequent to the investigation and contrary to Cincinnati Fire assignment standards, the City attempted to reassign and change Plaintiff's schedule in favor of employees who did not complain of sexual assault and harassment.

62.     The City failed to keep Plaintiff's complaints confidential among other Cincinnati Fire employees.

63. Because of the rape, assault, harassment, and Defendant's failure to take appropriate steps to ensure Plaintiff's safety and wellbeing, Plaintiff was diagnosed with post-traumatic stress disorder.

64. Plaintiff was subjected to a concerning workplace culture that is unwelcome toward women.

65. Plaintiff was one of multiple female CFD employees to have voiced concerns about a workplace culture that allows women to be treated unfairly and with disrespect.

66. The City knew of this conduct and the Fire Department's "boys club mentality" but tacitly accepted and approved such conduct for years, leading to Plaintiff's rape, assault, harassment, and severe emotional distress.

## COUNT I
### (Sex Harassment – Title VII)
### As to Defendant City of Cincinnati

67. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

68. Defendant City subjected Plaintiff to a hostile work environment because of her sex in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

69. Defendant City was aware of the hostile, abusive work environment and took no or insufficient action to prevent it or remedy it—even after Plaintiff's complaint against Defendant Wright was substantiated.

70. Because Defendant City failed to manage and prevent the hostile work environment created by Defendants Wright and Brown, and others, including Mitchell, Defendant City created, endorsed, and/or enabled intolerable and unbearable working conditions.

71. While Defendant City allowed Defendants Wright and Brown to take paid administrative leave during the sexual harassment and assault investigations, it required Plaintiff

to work as normal. Defendant City forced Plaintiff to use her own PTO and FMLA leave to avoid the unbearable working conditions Defendants created and failed to remedy until she complained of disparate treatment.

72. Defendant City's actions were willful, wanton, malicious, and/or in conscious disregard of Plaintiffs' rights.

73. As a direct and proximate result of Defendant City's unlawful conduct, Plaintiff has suffered damages and is entitled to judgment and compensation.

## COUNT II
### (Sex Harassment – O.R.C. § 4112)
### As to Defendant City of Cincinnati

74. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

75. Defendant City subjected Plaintiff to a hostile work environment because of her sex in violation of Ohio Rev. Code § 4112.02(A). This hostile work environment was created by Defendant Wright's and Brown's, as well as Mitchell's severe or pervasive harassment on the basis of sex. This harassment altered the terms and conditions of her employment, and/or interfered with her ability to perform her job.

76. Defendant City was aware of the hostile, abusive work environment for years and took no or insufficient action to prevent it or remedy it.

77. Because Defendant City failed to manage and prevent the hostile work environment created by Defendants Wright and Brown, as well as Mitchell, Defendant created, endorsed, and enabled intolerable and unbearable working conditions.

78. While Defendant City allowed Wright and Brown to take paid administrative leave during the sexual harassment and assault investigations, it required Plaintiff to work as normal. Defendant City forced Plaintiff to use her own PTO and FMLA leave to avoid the

8

unbearable working conditions Defendant City created and failed to remedy.

79.     Defendant's actions were willful, wanton, malicious, and/or in conscious disregard of Plaintiffs' rights.

80.     As a direct and proximate result of Defendant City's unlawful conduct, Plaintiff has suffered damages and is entitled to judgment and compensation.

## COUNT III
### (Retaliation – Title VII)
### As to Defendant City of Cincinnati

81.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

82.     Plaintiff engaged in protected activity under Title VII by complaining of sex discrimination.

83.     As a result of Plaintiff's protected activity, Defendant retaliated against Plaintiff in violation of Title VII, 42 U.S.C. § 2000e-3(a).

84.     Due to Plaintiff's protected activity, Defendant altered the conditions of Plaintiff's employment by attempting to change her schedule in favor of those who did not complain of sex harassment; allowing Defendants Brown and Wright to take paid administrative leave while forcing Plaintiff to work as normal; misrepresenting Plaintiff's remaining PTO hours, resulting in her being unpaid for two weeks; permitting Brown to continue to work on the same unit and/or schedule as Plaintiff; creating and failing to remedy intolerable working conditions for Plaintiff as reprisal for her complaints.

85.     Defendant's actions were willful, wanton, malicious, and/or in conscious disregard of Plaintiff's rights.

86.     As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has been injured and is entitled to judgment and compensation.

9

## COUNT IV
### (Retaliation – O.R.C. § 4112)
### As to Defendant City of Cincinnati

87.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

88.     Plaintiff engaged in protected activity under Ohio law by opposing sex discrimination.

89.     As a result of Plaintiff's protected activity, Defendant retaliated against Plaintiff in violation of Ohio Rev. Code § 4112.02(I).

90.     Due to Plaintiff's protected activity, Defendant altered the conditions of Plaintiff's employment by attempting to change her schedule in favor of those who did not complain of sex harassment; allowing Brown and Wright to take paid administrative leave while forcing Plaintiff to work as normal; misrepresenting Plaintiff's remaining PTO hours, resulting in her being unpaid for two weeks; permitting Brown to continue to work on the same unit and/or schedule as Plaintiff; creating and failing to remedy intolerable working conditions for Plaintiff as reprisal for her complaints.

91.     Defendant's actions were willful, wanton, malicious, and/or in conscious disregard of Plaintiff's rights.

92.     As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has been injured and is entitled to judgment and compensation.

## COUNT V
### (Intentional Infliction of Emotional Distress)
### As to Defendants City of Cincinnati, Wright, and Brown

93.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

94.     Defendant City acted with malice when it intentionally engaged in conduct that caused severe emotional distress to Plaintiff through failing to protect Plaintiff and her

wellbeing; failing to appropriately address the ongoing harassment; forcing her to continue to work in the hostile work environment while her harassers, Defendants Wright and Brown, were permitted to take paid administrative leave; subjecting her to a flawed investigative process; and allowing Defendants Brown and Mitchell to continue to work the same unit and/or schedule as Plaintiff after her serious and credible complaints of sex harassment.

95. Defendant Wright intentionally engaged in conduct that caused severe emotional distress to Plaintiff by raping her.

96. Defendant Brown intentionally engaged in conduct that caused severe emotional distress to Plaintiff by sexually assaulting her and attempting to rape her.

97. At all times relevant herein, Defendants knew or should have known that their conduct would cause Plaintiff severe emotional distress.

98. The outrageous conduct of Defendants was so extreme that it extends beyond all possible bounds of decency and is intolerable in a civilized community.

99. The extreme and outrageous character of Defendant City and Defendant Wright's conduct was an abuse of their power and authority over Plaintiff, causing her extreme, serious, debilitating emotional distress.

100. As a result of Defendants' conduct, Plaintiff was diagnosed with and suffers from post-traumatic stress disorder.

101. Defendants' extreme and outrageous conduct intentionally or recklessly caused Plaintiff severe emotional distress.

102. At all relevant times herein, Defendants' conduct was the proximate cause for Plaintiff's psychic injuries and anguish. There were no possible intervening or superseding causes that could explain Plaintiff's mental anguish, other than ongoing mental distress she

suffered at the hands of Defendants.

103. The mental anguish suffered by Plaintiff is so serious that no reasonable person could be expected to endure it.

### COUNT VI
**(Negligent Retention/Hiring/Supervision)**
**As to Defendant City of Cincinnati**

104. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

105. At all times relevant herein, Defendant City was negligent in its hiring, training, supervising, and retaining of its employees and agents including but not limited to Defendants Wright and Brown and remaining staff not herein expressly identified.

106. Defendant City knew it employed Defendant Wright, who was charged with domestic violence and who had credible complaints of sexual harassment and assault lodged against him, prior to Plaintiff's rape.

107. Defendant knowingly employs Defendant Brown, who was credibly accused of sexual assault and attempted rape.

108. Defendant knew or should have known that its negligence in its hiring, training, supervising, and retaining of the aforementioned, rendered its employees unfit and incompetent. Defendant had a duty to appropriately investigate and respond to serious and credible complaints of sex harassment and assault.

109. Defendant knew or should have known of its employees' conduct. But for Defendant's reticence to ensure Plaintiff was not subjected to sex harassment, hostile work environment, and subsequent retaliation, Plaintiff would not suffer from serious and debilitating mental anguish.

110. The conduct, acts, and omissions were the direct and proximate cause of the sex

harassment of Plaintiff and her resulting psychic injuries. There were no possible intervening or superseding causes that could explain Plaintiff's injuries other than the ongoing mental distress she suffered at the hands of Defendant.

111. As a direct and proximate result of the failures and omissions noted above, Defendants, its employees and agents, each caused the resulting harm and damages to Plaintiff, for which Plaintiff is entitled to relief.

**COUNT VII**
**(Civil Recovery for Criminal Act – O.R.C. § 2307.60)**
**As to Defendant City of Cincinnati**

112. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

113. Defendant City knowingly and with the purpose to defraud Plaintiff concealed public records in violation of O.R.C. § 2913.42.

114. Plaintiff made a public records request relating to her complaints against Defendants Wright and Brown, as well as Ervin Mitchell.

115. Relevant documents, including Plaintiff's own Chief's Report and Meghan McQuiddy's complaint against Defendant Wright were not included in the produced public records materials.

116. Defendant City later represented to Ms. McQuiddy that it had lost her complaint against Defendant Wright.

117. Plaintiff's own complaints about Mitchell were likewise excluded from the production.

118. Plaintiff was and continues to be injured by Defendant's falsification and/or concealment of these records.

119. Plaintiff is entitled to relief and judgment pursuant to O.R.C. § 2307.60, including

but not limited to the costs of maintaining this civil action, attorneys' fees, and punitive damages.

## COUNT VIII
### (Civil Recovery for Criminal Act – O.R.C. § 2307.60)
### As to Defendant Wright

120. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

121. Defendant Wright forcibly initiated non-consensual intercourse with Plaintiff against her will in violation of O.R.C. §§ 2907.02 and 2907.03.

122. Defendant Wright engaged in sexual conduct with Plaintiff by purposely compelling her to submit by force or threat of force in violation of O.R.C. § 2907.02(A)(2).

123. Defendant Wright engaged in sexual conduct with Plaintiff by knowingly coercing Plaintiff to submit by means that would prevent resistance by a person of ordinary resolution in violation of O.R.C. § 2907.03(A)(1).

124. Defendant Wright purposely abused his position of authority over Plaintiff by coercing her to submit to his initiation of non-consensual intercourse.

125. Plaintiff is entitled to relief and judgment pursuant to O.R.C. § 2307.60, including but not limited to the costs of maintaining this civil action, attorneys' fees, and punitive damages.

## COUNT IX
### (Civil Recovery for Criminal Act – O.R.C. § 2307.60)
### As to Defendant Brown

126. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

127. Defendant Brown forcibly initiated non-consensual contact with Plaintiff against her will in violation of O.R.C. §§ 2907.05 and 2907.06.

128. Defendant Brown engaged in sexual contact with Plaintiff by purposely compelling her to submit by force or threat of force in violation of O.R.C. § 2907.02(A)(1).

129. Defendant Brown engaged in sexual contact with Plaintiff knowing such contact

14

was offensive to her in violation of O.R.C. § 2907.06(A)(1).

130.    Plaintiff is entitled to relief and judgment pursuant to O.R.C. § 2307.60, including but not limited to the costs of maintaining this civil action, attorneys' fees, and punitive damages.

**COUNT X**
**(Denial of Equal Protection—42 U.S.C. § 1983)**
**As to Defendant City; Defendant Wright in his personal and supervisory capacity; and Defendant Brown in his personal capacity**

131.    Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

132.    Plaintiff has a right, protected by the Fourteenth Amendment's equal protection clause, to be free form invidious discrimination based on sex in public employment.

133.    Plaintiff suffered purposeful or intentional discrimination as detailed in the proceeding paragraphs including, rape, sexual assault, sexual harassment, and retaliation.

134.    Defendants violated Plaintiff's constitutional right to be free from sex discrimination.

135.    Plaintiff's right to be free from sexual discrimination in employment is clearly established such that any reasonable public employee or official would have known that.

136.    Defendants were acting under the color of law.

137.    Defendants' conduct was objectively unreasonable given Plaintiff's clearly established constitutional rights.

138.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer damages for which Defendants are liable.

139.    The risk that Defendant City will place Defendant Brown in a position to sexually assault, sexually harass, and retaliate against Plaintiff warrants injunctive relief against Defendants.

140.    Defendants' acts were willful, egregious, and malicious.

15

**COUNT XI**
**(Denial of Substantive Due Process—42 U.S.C. § 1983)**
**As to Defendant City; Defendant Wright in his personal and supervisory capacity; and Defendant Brown in his personal capacity**

141.    Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

142.    Plaintiff has a substantive right to bodily integrity and privacy, protected by the Fourteenth Amendment's due process clause, to be free from sexual assault by a local government official.

143.    Plaintiff suffered purposeful or intentional discrimination as detailed in the preceding paragraphs including, rape, sexual assault, sexual harassment, and retaliation.

144.    Defendants violated Plaintiff's constitutional right to be free from sex discrimination.

145.    Plaintiff's right to be free from sexual discrimination in employment is clearly established such that any reasonable public employee or official would have known that.

146.    Defendants were acting under the color of law.

147.    Defendants' conduct was objectively unreasonable given Plaintiff's clearly established constitutional rights.

148.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer damages for which Defendants are liable.

149.    The risk that Defendant City will place Defendant Brown in a position to sexually assault, sexually harass, and retaliate against Plaintiff warrants injunctive relief against Defendants.

150.    Defendants' acts were willful, egregious, and malicious.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(a)    That Plaintiff be awarded compensatory damages;

16

(b)     That Plaintiff be awarded punitive damages;

(c)     That Plaintiff be awarded a permanent injunction against Defendant from engaging in any further unlawful employment practices;

(d)     That Plaintiff be awarded pre-judgment and post-judgment interest;

(e)     That Plaintiff be awarded reasonable attorneys' fees;

(f)     That Plaintiff be awarded reasonable litigation expenses and costs; and

(g)     That Plaintiff be awarded all other legal and equitable relief to which she may be entitled.

Respectfully submitted,

*/s/ Paige E. Richardson*
Kelly Mulloy Myers (0065698)
Paige E. Richardson (0102380)
Trial Attorneys for Plaintiff
Freking Myers & Reul LLC
600 Vine St., 9th Floor
Cincinnati, Ohio 45202
Phone: (513) 721-1975/Fax: (513) 651-2570
*kmyers@fmr.law*
*prichardson@fmr.law*

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Paige E. Richardson*

17